Good morning, Your Honors. Theodore Boutrous for Wells Fargo. I'd like to reserve three minutes for rebuttal. Thank you. The stipulated facts in this case, the plain language of Section 226.7, and at least four California Supreme Court decisions, the Kirby decision, Brinker decision, the Augustus decision, and the Ralph's grocery decision, all compel reversal in this case. The first issue I wanted to focus on was the fact that Section 226.7 only provides a remedy for the failure to provide a rest break. The Kirby decision from the California Supreme Court could not be clearer. It says over and over again that the statute was triggered by the non-provision of meal and rest periods, not the non-payment of wages. And here it's undisputed. And I would disagree with Vaccaro to agree with you, right? No, Your Honor. In Vaccaro, as far as we can tell, and we've scrubbed the opinion, the briefing, that that issue was not raised in that case. It came up on the procedural posture that the defendant had won below. So the defendant did not make the argument, as far as we can tell, on appeal regarding this question, whether it's the statute's trigger. And when it's agreed, there's no allegation in this lawsuit that the home mortgage consultants were denied the opportunity to take 10-minute rest periods. And the district court on both, I think, it's you. But in Vaccaro, that was true also. I mean, in Vaccaro, there was no dispute that the employees had had rest breaks. I'm not sure about that, Your Honor. Really, that case was litigated completely. I mean, so Vaccaro says the employer authorized and permitted sales associates to take rest periods of at least 10 minutes. The parties agree that Wage Order 7 applies and the parties – sorry, the parties agree that Wage Order applies and that sales associates were permitted and authorized to take rest periods. And again, Your Honor, the defendant didn't argue, did not make the argument under Kirby that 226.7 is not triggered by that. And I think it does not stand for the proposition in this court and in California. If a court doesn't address an issue, the case is not precedent for it. But what was Vaccaro doing if it wasn't having a remedy? It was assuming that there was a remedy for failure to pay without deciding the threshold question. But are you then arguing that Vaccaro – there's another argument that wasn't made in Vaccaro that if it were made, you believe the California Supreme Court would adopt? Exactly. That if in Vaccaro the defendant had made our argument and Vaccaro had rejected it, I think the California Supreme Court, based on Kirby, the court said probably six times that it does not cover non-payment wages. That's Section 1194, which the plaintiffs – I mean, I understand your argument that it wasn't expressly raised in Vaccaro, except I don't understand what Vaccaro – I mean, it would be like Vaccaro wouldn't exist at all, wouldn't it? How could Vaccaro exist at all, if you're right? Well, if the – we don't know in that imaginary world. If the defendant had raised it, the court of appeal, I think, would have been hard-pressed to ignore Kirby. But since it wasn't litigated, the court just assumed what the parties brought to the court and jumped right to the damages question. Are there cases where we have a court of appeals decision on point where the Ninth Circuit has not followed it as a matter of state law? I mean, it's interesting here, because you said the California Supreme Court denied cert. I'd also be interested in your view on what bearing that has here. I mean, so maybe if you could take both of those questions. Yeah, I think it has no bearing, just as in, you know, when the Supreme Court doesn't take cert from a decision from this court, doesn't say one way or another. And the California Supreme Court has said it does not reflect a judgment on the merits. And I do know, you know, I don't have one at my fingertips, but here, where the guidepost is what would the California Supreme Court do, there's a California Court of Appeal case that doesn't address the issue we're raising, and there's a California Supreme Court case, Kirby, that says emphatically that this provision, section 226.7, is only triggered where the employer fails to provide rest breaks, fails to give the opportunity, makes the employee keep working. So it's absolutely clear, and Vaccaro does not say anything about that. And the fact that it doesn't, that the parties didn't litigate that issue, does not bind this court to Vaccaro. Is that, does that create a question of whether we should certify this narrow question you're now talking about? Does they, listen, Vaccaro's here, but we didn't see this argument made, you know, the Supreme Court said in Kirby that it doesn't provide a remedy, and then we would certify to the California Supreme Court. Would you agree with that, or not? The court could do that, but I think if you look at Kirby, the Brinker case, Augustus, all those cases talk about the fact that 226.7, the obligation of the employer is to make sure that there's an opportunity to take a rest break. They don't have to require the employees to take a rest break, they don't have to force them, they must provide and authorize and permit a rest break. So I think it's clear, but if the court doesn't agree with us on this, I think certainly that would be an option. And again, the court's divining what the California Supreme Court would do. Vaccaro's one benchmark, and I'm going to talk about it in the context of jumping to the next issue, but it, yes. On this certifying the question issue, we have amici in this case, and it's sort of interesting because it's a state law question, so usually we can't really help the amici, we can resolve this dispute, probably at a mem dispo, or we can send it to the California Supreme Court. I think it demonstrates the importance of the issue, Your Honor. So again, when you look at, you know, where it's an issue that guidance is needed, I think that it certainly militates towards certification as opposed to ruling against us because I think the California Supreme Court's decisions are clear. Vaccaro, as we discussed, I think it's wrongly decided, but the court doesn't have to deal with that because it didn't address this issue. And I think it's easily distinguishable on the next issue regarding whether, let's assume Section 226.7 does allow a recovery for nonpayment of a rest break. We paid, Wells Fargo paid the rest breaks. It stipulated that there was hourly wages that were paid to every employee. They were vested. It stipulated that they were vested. So I don't understand how this vested argument distinguishes Vaccaro because Vaccaro said, although the company did, the company, I think it used Vaccaro, but, or whatever the company was called, Stoneledge, although Stoneledge deducted from sales associates' paychecks any previously, anything previously paid drawn on commissions, the company states that such repayment was never taken if it would result in payment of less than the hourly wage, which seems like they're saying that that's essentially vesting there too, isn't it? No, Your Honor. They said that in Vaccaro that the true up, it was a pure commission system. If someone didn't make enough commissions to meet $12 an hour, they would true it up. But as Vaccaro said, that was not compensation at all. It was like an interest-free loan. And then it could be taken back in the future commissions. Well, it could be, but they said they would never, it was never taken if it would result in payment of less than the $12.01 per hour for all time worked in any week. So I thought that meant that if you never earned enough commissions, they were never going to have you earn less than $12.01 for every hour in a week. It's hard to know how it played out in practice all the time, but the California Court of Appeal, the premise of its decision was that there was no minimum hourly wage paid. And one quote, Your Honor, they say they're separate compensation tests. This is, the court says that employers are required to separately compensate employees for rest periods if an employer's compensation plan does not already include a minimum hourly wage for such time. Our compensation system does. It's undisputed. It's, the hourly wage was paid no matter what. It was vested. The wage statements, if you look at the excerpts of record at 300 through 309, every time, no matter what, there's regular pay, it's hourly pay. The comp plan says this is vested. Plaintiffs latch on to the notion that it's called advances, but the comp plan and the offer letter say we refer to that because it's used later to see if you get more than the hourly rate. So there was hourly rate You dropped below where you would be at risk of violating minimum wage laws, wouldn't you? No, Your Honor, because there's a guaranteed 12-hour rate. That's what I'm saying. If you didn't do that, you would violate them. Exactly. And Judge Schroeder. So it was a protection for you. And for the employees. It was a protection for the employees. And then they could make more money, more compensation, commissions and incentive compensation. But I just don't understand. So this, if repayment in VCARA was never taken, if it would result in a payment of less than 12.01 per hour for all-time work, how is that not exactly the same, maybe with different words labeling it? Well, because there was, according to VCARA, the fact that there was a clawback of the true-up, which was not an hourly wage, meant there was no way you could tell for sure whether people were compensated for their rest breaks. Here, we know for a fact, and the judge said it, ER19, ER22, that because there was an hourly wage paid that was vested and that was kept and the employees were not required, did not clock out, they were paid for their rest break time. We know that for a fact and they were paid minimum wage. That's what the law requires. And so the fact that then they could make more compensation, we shouldn't punish a company for giving more compensation, that was then used to calculate as part of this complex formula. And that was subtracted. If they made more commissions, is that right? It wasn't subtracted, Your Honor. In fact, that brings me to the Ralph's Grocery case. It was not deducted or subtracted. It was used as a part of the formula to see if the employee had, through his or her productivity, made commissions. And it's not a semantic issue. They're going to come up and say it was subtracted. The employee got $12 an hour. They were paid for their rest break. Taken into account. It was taken into account. Thank you. That's much better said than I did. But that's key because they have this magical thinking approach here that an employee who got paid for a rest break, $12 an hour, who got their rest break, the fact that it was taken into account, what they made per hour to see if they could get more compensation, eliminates the reality that they got their rest break and they were paid for it. And that's, Ralph's Grocery says that's incorrect. That it's perfectly appropriate to look at compensation already received to give a bonus or incentive pay. So if you take Ralph's Grocery, Kirby, and I think, Your Honor, that Judge is different. To say, pure commissions, we're going to do this formula. Vaccaro thought that meant you couldn't tell if the people were paid for their rest breaks. Here we know for a fact that they were. So I think that, again, Vaccaro is a very confusing decision. I think it's wrong. But you don't have to reach that. Maybe I'll address the damages issues. The FARA decision, I think, does provide clear on the question of whether you look at the hourly rate in determining the one hour of pay for the pay premium. What's the status on that? Is that still pending? I believe there's a day or two before it becomes final. Meaning they have not sought a cert? Correct. So that could happen in the coming days. But I think that decision is clearly correct. It relies on the five, cites the five district court decisions we relied on. But it's very sensible. The argument that was accepted below and that Mr. Rubin will make is that because 226.7 uses one hour of pay at the regular rate of compensation, that should be interpreted like the phrase regular rate of pay in the overtime law. There's just no basis for that. Those are two different phrases, compensation and pay. What's the difference? Well, here the key difference, Your Honor, is rate of pay, as they argue for pages and pages, is a term of art under the overtime laws. Rate of compensation is not. And here rate of compensation is tied directly to one additional hour of pay, which seems to clearly indicate that the premium, which is a very, very generous payment for 10 minutes, an hour for 10 minutes already, that the legislature and the wage order was referring to the hourly rate of compensation. And that failure to apply that rule inflated the damages by like $73 million. So at a bare minimum, we respectfully request the court reduce the award. Do you think that there's at least some tension between Vaccaro's reasoning and Farah's reasoning, though? Because Vaccaro talks about this idea that people who earn commissions are not going to actually earn the commissions during the rest breaks, and that that is part of the problem. And then Farah says that's not a problem. So is this a further reason that we need to certify this to the California Supreme Court? It's not clear to me how both of these could be right. I don't think that Vaccaro, again, didn't address this question. So I don't think it stands for a proposition that relates to this damages issue. But what I can say is I want to challenge this notion that there's no support for it in the record here, that commissions and a commission system is going to deter someone from taking a rest break. It's not like some alone officers there and there's an unlimited supply, like a conveyor belt of customers, and if they take 10 minutes off, they're not going to get a customer. So there's no support for that. And our system gives individuals a paid rest break, conforms to the minimum wage law. That's the end of the story under 226.7, under Vaccaro, under the Supreme Court's decisions. Now I will reserve the rest of my time. Thank you. Thank you, Michael Rubin, for playing this. Mr. Boutrous made three arguments. I'll address them in turn. But first, Judge Nelson, the FARA decision, the deadline is actually November 18th for either a petition for review or a request for publication. And I think after I get through my arguments, I'll talk about certification or whether to defer submission in light of the issues and the potential conflicts. The three arguments, first, were whether this is an appropriate claim at all. The second is whether Vaccaro controls. And the third is whether FARA accurately predicts what the California Supreme Court would do when faced with this situation. The first issue is very straightforward. Vaccaro obviously did treat this case as a valid claim. The claim is whether there's a violation of state law, 226.7, if an employer fails to pay the rest break. It sounds like they did. Am I misunderstanding the argument? Or maybe you can address this argument that they did pay them for the rest break. They did not pay in accordance with law. What 226.7 says is that a rest break has to be paid in accordance with law. That includes specifically the wage order law. The wage order law requires the pay for the rest break to be at the regular rate of compensation, the argument is that Wells Fargo did not pay the rest breaks at the regular rate of compensation. That is the violation of 226.7. Because it was rolled into a commission structure. Yes. If they paid $6 an hour, Wells Fargo would acknowledge that. But I thought the commission structure would only kick in if it was going to be effectively a bonus to them. If not, then they'd go back to the regular hour of pay. As Judge Schroeder pointed out, the $12 is a minimum, just as it was in the Vaccaro case. An employer has to pay at least that amount in order not to violate the state minimum wage law. The requirement of being paid is a requirement that you be paid without deduction. That's what section 12A of wage order 4, 2001, says.  No, it's actually the $12. It's the deduction from the commission. It's presented as an advance on commission. We'll get to that. It's like you don't get it at all. You don't get it at all. Someone who performs at a basic competent level and sells in the commission, someone who performs at a basically competent level, is paid only in the commission and receives the same amount of pay for that commission, whether they take their rest breaks or not. Therefore, have no incentive to take rest breaks. It is the fact that they earn the exact same amount, whether they take the rest break or not, that shows under Vaccaro and preferred in the rest of the cases. Either way, they're getting the compensation. If they're working 12 hours a day, they're receiving the amount of money. Say they're working 10 hours a day. They're receiving at a minimum the same amount of money. I mean, it just feels like you're trying to bootstrap and far be it from me to jump into what the California courts do. Let me make the point more clearly then. California law requires that a rest break be paid at the legally required level, whether you agree that Wells Fargo paid at the legally required level or not. The claim under 226.7 was that Wells Fargo did not pay at the legally required level. That is a valid claim. Vaccaro says it's a valid claim. In fact, we have two stipulations in this case that state the issue. One at 322, one at 201, where the parties and the court accepted the stipulation state that the issue to be decided is whether the terms of the compensation plan satisfy the requirements of section 226.7. So even if there were some basis for the argument, Wells Fargo stipulated it away. So that's the first issue. So can I ask you a question that I'm trying to understand about how this compensation should be calculated in your view compared to overtime? Because if I'm understanding the record correctly on how overtime is calculated, it's like an average of the commissions which you get by dividing the commissions by the number of hours. But then there's this multiplying by .5. So it seems like the overtime amount for commissions is really like half of the average hourly commissions? Or am I misunderstanding that? No. The calculation of the regular rate is identical. But overtime premium requires time and a half. So once you factor in the commissions, divide the total remuneration by the number of hours, that gives you your regular rate. We say regular rate of pay is the same thing as regular rate of compensation. But it gets you the regular rate. For overtime, you get that amount and half again. So the .5 is just for the and a half. It's not for the rest. So you want to do the base calculation for the rest breaks? That's right. Because 226.7 says that you get an extra hour at your regular rate of compensation. And if rate of pay and compensation is the same thing for the reasons Justice Edmund pointed out in her dissent in FARA, then you get the same calculation. I was trying to figure it out from the record. So you agree with Judge Edmund in her dissent that the rate and... Justice Edmund, yes. And the question is obviously in determining what the California Supreme Court is going to do is not counting the votes. It's looking at the analysis. And Justice Edmund, it was a devastating critique of the majority. The analysis, and you saw it at pages 17 to 19 of her opinion, says you start with the term of art that everyone recognizes, regular rate. And there was additional language in the FLSA that is not copied by the IWC. Regular rate, everyone agrees, is the total remuneration. Pay and compensation, if you look in the dictionary, if you look at the fact throughout the labor code, throughout the IWC wage orders, throughout the DLSC enforcement manual, they are used interchangeably. We gave many examples. She gave many examples. And the question is simply whether a canon of construction, which says that in some instances when a legislature uses a different language, it may mean two different things, requires a different result. The majority never explained why the particular result it reached is compelled by the difference in language. The California Supreme Court repeatedly, in Murphy, said that pay and compensation are used interchangeably. In the more recent ZB case, went back to Murphy and said, yes, that's what Murphy said, and you can't assume a difference just because different words are used. We know historically why different words were used. In February, they used the FLSA, regular rate of pay language. In August, they just tracked the IWC, regular rate of compensation language. So for all of the reasons that Justice Edmund recognized, they are the same. They should be treated the same. And the purposes are furthered, which are to provide an incentive to employers to give rest breaks and for employees to take rest breaks. And that only happens if you provide the same type of compensation you would in the other circumstances. And so you do not agree with the argument that I thought was made today that all Vaquero says is that you have to give them a rest break. You don't have to pay them. No, no. Murphy, for example, actually says that the requirement of California law is that you provide a paid rest break. Vaquero requires a rest break. There's no indication that Vaquero isn't the law of Vaquero. And recall that this Court decided the companion case to Vaquero because in addition to not paying rest breaks, that same company in Vaquero v. Ashley Furniture, which was the exact same case involving the exact same sales associates, they also didn't get paid for time waiting for sales meetings and other things. So the analysis that this Court applied in Vaquero v. Ashley Furniture was identical to the analysis the California Court of Appeal in the Stoneledge, Vaquero case. Kirby is not in danger of that? No, Kirby. So the issue in Kirby was how to apply the two-way fee shifting provision of Labor Code 218.5. Most statutes give fees only to the prevailing plaintiff. That's one-way fee shifting, absent special circumstances. 215.5 says in a case for nonpayment of wages, then whichever party prevails is entitled to fees. So the question was whether on the facts of Kirby, and the facts of Kirby are critical, there is a claim for the prevailing party for a nonpayment of wages fees. And the way Justice Liu dealt with that in the California Supreme Court is he looked to the facts. What happened in Kirby was not what's happening here. In Kirby, there wasn't a question about whether rest breaks were paid or not. There was no question of whether there was a nonpayment of rest break. The issue was whether the employer had failed to provide a rest break at all. And the question was whether a claim for the remedy for failure to provide a rest break, the extra hour of damages, that wages or penalty, but Murphy said it was wages, is something that could trigger a 218.5 two-way fee shifting provision. And so when the Supreme Court, Justice Liu said, no, this isn't an action for nonpayment of wages, that is not, that means that a claim for the remedy under 226.7 for the failure to provide a rest break at all is not a claim for wages. It's a claim for failing to provide a rest break. And that's how, that's why Kirby is. Can I ask you about FARA? So is your argument, obviously we need to wait, it sounds like, and see whether a petition is filed, whether the California Supreme Court takes it, but if they don't, let's say they don't take it or no petition is filed, it sounds like your argument is we shouldn't follow FARA because you think it's wrongly decided. Absolutely. And let me explain what could happen in FARA. First of all, the petition for review will be filed and there will be requests for depublication. Are you involved in that case? I submitted an amicus brief in that case on behalf of Ms. Ibarra. Before the Court of Appeals? Before the Court of Appeals, that's correct. And in fact, my colleague, Ms. Goldsmith, argued that case on behalf of amicus in the Court of Appeal. In the California system, the court could either grant review or could grant depublication and have the case no longer have any precedential value. So we won't know for several months what the California Supreme Court is going to do, but there will be requests to review and to depublish. I understand, but I mean, I guess we could ask for additional briefing at that point, but I'm interested in your view of why... This is interesting to me on when we, as a Court of Appeal, can reject a state Court of Appeal decision, because I've seen this in other cases where we have split decisions and those seem to be the most likely candidates, you know, generally, but I'm not clear on what the standard is. I mean, we have to just say... I mean, it seems odd to say we're going to defer to the state courts, except when we think they're wrong, and then we won't defer to them. And that's... Why can't we do the same thing with Vaquero then? Different... You could if there were a legitimate basis for doing so if there weren't a stipulation. If there weren't Murphy saying that 226.7 says you have to provide paid rest breaks, the California Supreme Court would likely deny a request for certification, because recall, you can only ask the Supreme Court to accept certification. You can't compel it to certify. The standard is articulated in different ways in different cases. Essentially, it's a rebuttable presumption. If you have a Court of Appeal decision that is a final Court of Appeal decision, and here, obviously, FARA isn't even a final decision, then you can presume absence of some persuasive evidence to the contrary that that's what the California Supreme Court would do. We've pointed out in our briefs why the... And Justice Edmond far more elegantly and eloquently than we pointed out why the California Supreme Court is not likely to adopt the FARA analysis. You are not bound by FARA. Neither are the other five Courts of Appeal in California. Well, I understand that, but that just makes it very problematic for us, because we have case law that says we should follow a Court of Appeals unless there is... And that's the question. What is that standard? Unless there is persuasive evidence to believe that the California Supreme Court would reach a different conclusion. In this case, Justice Edmond lays out all that persuasive evidence we've included. The number of cases that... She cited five cases in which California courts have said difference in language does not mean difference in content. We cited two or three others. The amicus brief in support of us, CILA, cited additional cases. Murphy itself does. So there are lots of reasons to believe... But your position, and I know I'm taking you over time, or what you might want to reserve, but is if this California Supreme Court denies review, that that has no bearing. You give that no weight. I mean, you sort of agree with them. Your position would be we would still look and say, look, Edmond should be... His dissent makes more sense. Yes, and the question then would be whether our position would certainly be the majority never, did not thoroughly analyze the issue, has no response to Justice Edmond. That's not what the California Supreme Court would do when it actually takes the case. You can push it along a little bit by requesting certification. I think we should request certification if they deny review. I mean, aren't we as a court, if they deny review, it seems a little odd that we then go back and say, well, hey, we think you got it wrong. You really should take this case. No, because there are lots of reasons a court can deny review, and the Supreme Court could decide to reject certification. Like the Colbert CRST case. The Supreme Court of California, within the last three weeks, rejected a request for certification from this court, and the court then has to decide it. In the Kirby versus, sorry, the Kilby versus CVS case, there were three cases before this court. One against Walmart, one against CVS, one against JPMorgan Chase. This court requested certification of two. The Supreme Court granted two. This court held the third and ultimately decided the third in light of what the California Supreme Court did. So it happens all the time. Are you saying that this case is really the same as Farah? No. No. This case is factually no. Even if the California Supreme Court decided to yes, and we lay that out in our briefs. In this case, there was no ‑‑ in Farah, there was an hourly rate. And a nondiscretionary bonus on top of that. But there was plainly an hourly rate. In this case, as Judge Anderson pointed out, there wasn't an hourly rate at all. So there was a commission. So no. This is factually distinguishable from Farah in any respect, which may be another reason why the court reaches a different decision. And as we pointed out in our briefs, is one reason there's no need to certify or defer submission. Because the judgment below should be affirmed, even if Farah on the facts presented in Farah were correct. So I still have a question. I'm going to give you more time for rebuttal just to make clear So I have a question about these HMCs who received only hourly pay because they didn't get enough commission. So in their view, there are 961 of them. It seems like at one point you said there may be 404 of them. As to those HMCs, are you relying solely on a waiver type argument at this point? Or are you contending that they actually weren't properly compensated somehow? They weren't actually compensated and there was waiver. Okay. Can you explain the not properly compensated part to me? Because I'm having a little trouble understanding that argument, I think. Okay. Two parts. First, you look at the compensation plan. And as part of that, you look at the analysis, the compensation plan does not provide an hourly wage. It just provides what, in fact, Wells Fargo describes as an hourly wage per rent advance on commissions. So the plan itself is invalid. Secondly, the But is it, I mean, they would have gotten the $12 an hour for including the time on commission. The problem is you're saying that that wasn't anticipated to be really an hourly rate. It was anticipated to be an advance on commissions. Yes, that's the first argument. The second argument is that the data doesn't actually show that these people didn't receive commissions. The data that, first of all, the data that was submitted as Judge Anderson pointed out at page 13 of the excerpts, defendant, and this is the waiver, fails to establish how many, if any, such HMCs there were. So why did he say if any? The reason is because we don't know that any of the supposed 961 or 404 got no commissions and had no offset. As best we can tell is that it multiplied out to a factor times 12, but that could have been because there were low commissions at all, and in fact, they didn't get the hourly wage, and there was just no way for Judge Anderson to tell. So if we agree with you that you never stipulated to there being this category and there being 961 of them, does that just leave us with a fact dispute on how many there are, though? I'm not sure I see a stipulation from them the other way either. So it feels a little bit like you both have an argument that you didn't agree on this, and that might mean we should remand for fact development on this question of that category of these people. No, because what Judge Anderson concluded in that sentence, that defendant failed to establish how many, if any, such HMCs there were, means that they didn't even establish the threshold fact necessary to create a dispute of fact, and that's why the case was able to proceed and be resolved on stipulation. So they didn't meet their threshold burden as to whatever number there, if any, there may have been. But the main argument is the first one, which is the compensation plan itself, just like a compensation plan that says everyone gets the minimum wage, and obviously we know from the language in the letter that everyone receives and the policy that the expectation of this is that if you don't sell, you don't stay. And therefore, the fact that they had the start-up option the first three months where there was no carryover doesn't affect the nature of the compensation plan itself. It is a commission plan where you just do not get paid separately for your rest breaks, which under California law is unlawful. Thank you. We'll give you five minutes for rebuttal. Thank you very much, Your Honor. What Mr. Rubin said is simply false. It's not supported by the record. He referenced the offer letter. There's no indication that the company said if you don't sell, you leave, and that's irrelevant. What the offer letter says, it's at excerpts of record, page 207, it notes that advances are fully earned based on hours worked and any other paid time. They're referred to as advances because they're taken into account in calculating the incentives. The notion that there's no hourly wages here is fantasy. Your Honors, it's stipulated. Take a look at ER 196. The plaintiffs agreed that the fact that the hourly pay is taken into account in calculating net commissions incentives shall not give the employer the right to recover any hourly pay. Hourly pay is fully vested when received and is not subject to recapture under any circumstances. It's just to say this was not, there was no hourly pay. The wage statements, 300 in the excerpts of record or 309, regular pay was always paid. Just claiming it was not paid is not enough. I think you're right. The problem is we're dealing with California law and we have this great federalism principle where we defer to state law and that doesn't seem to benefit your client in this case. I think it does, Your Honor, because the difference in Vaquero, which seems to become like the Vaquero, the difference was there was no paid hourly wages. And I know, Judge Freeland, you said that you don't think it's a difference. They said it was not compensation at all. The wage statements in Vaquero did not every time say regular pay. It was taken away. The fact that you get it in commission here But they said it wasn't. I mean, they said you'd never make less than $12 an hour. So I don't understand. It seems like it wasn't different. That's different, Your Honor. The employee never knew if they got to keep the money. And at the end, if you look at the chart in Vaquero, it shows, oh, the chart shows how much they're making. And then they would owe the employer money. That didn't happen here. If the employee here left with a balance where they weren't getting a commission, they didn't have to owe anything. But it doesn't, I mean, but you could call it owing while they're still there. And we was ever actually owed if they left because there's also the statement that they would never make less than $12 an hour. But whatever the situation in Vaquero, Your Honor, we know as a matter of stipulated fact and the trial judge said this, there was an hourly $12 wage paid that covered rest breaks. The rest breaks were paid. Under Kirby, that's the end of the story under 226.7. Murphy was before Kirby. I mean, we're not saying that the breaks shouldn't be paid, but that's a We're looking for, we're reading the TLEs with Vaquero. Let's go back to Kirby. It says it's for, a violation that triggers the premium pay is the non-provision of a rest break, not the non-payment of wages. Do you have a response to the last point that we were discussing with Mr. Rubin about the, whether there's a fact dispute on the number of employees who didn't get commissions or, can you? I have a response. I think it's indicative of this just preposterous situation we're in, where they're saying what is in stipulated facts doesn't matter. The stipulation set, the only evidence in the record is the stipulation that our experts said there were 961 employees. But, but, but, I mean, so your experts said that. They stipulated the fact that your experts said that. So, you know, they're saying that doesn't mean we agreed it was true and you're saying they did agree it was true. Say we agree with them that that doesn't mean it's true, but then that still leaves us sort of with nothing, maybe. Or, or, like, where, what is your response to what else you did if we, or is that the only thing you did? Well, the, they're, they're, they're the plaintiff. They have the burden of proving that each individual in the class is entitled to damages. It wasn't our burden. And the fact that the judge, you know, couldn't find anything. The stipulation, though, Your Honor, was. Well, who moved for summary judgment? Both sides. Both sides. So then. And they won. And, and what, I mean, and was the only discussion, this reference to this stipulation, this expert had said? Yes, but, Your Honor, it's a stipulation of what the evidence was. So the evidence in the record is our expert's testimony unrefuted by the plaintiffs that 961 people didn't get a commission and therefore their hourly pay covered their rest breaks. That's the end of the story. And, and I think we just need to go back. The facts here are undisputed. People got $12 an hour. They were compensated. This wasn't a loan, like in Vaquero. There's a big difference. So, but when, so there's the statement about the expert. Is there any, do we have any pay records or anything in the record that shows us how you would count how many of these people there are? Because it seems like there's a dispute about the number or whether these people even exist. Is there anything else other than that one statement in the stipulation? I think that's it, Your Honor. I believe we, we sent in something after the, the judgment came in that provided some additional information. But frankly, that's the tail wagging the grave injustice. It would violate the class action rules. It violates clear California law. The court doesn't need to search. Kirby decides this question. Ralph's Grocery decides this question. And people received payment for their breaks. You can't award $100 million to a class under those circumstances. Thank you very much. Thank you both sides for the very helpful arguments. This difficult case is submitted.
judges: Schroeder, Friedland, Nelson